The CLOROX COMPANY, Plaintiff,

v.

INLAND EMPIRE WHOLESALE
GROCERS, INC., et al.,
Defendants,

And Related Counter–Claims
and Cross–Claims.

No. CV–93–4528–JMI (Ex).

United States District Court,
C.D. California.

March 3, 1994.

ORDER GRANTING MOTIONS TO
DISMISS WITH PREJUDICE

ORDER DENYING MOTION TO SEVER
AND STAY COUNTERCLAIM

ORDER GRANTING REQUESTS
FOR JUDICIAL NOTICE

ORDER GRANTING IN PART AND DE-
NYING IN PART APPLICATION OF
MORCO FOODS TO FILE FIRST
AMENDED COMPLAINT; COUN-
TERCLAIMS AND CROSSCLAIMS

IDEMAN, District Judge.

IT IS HEREBY ORDERED:

Counter-defendant L & F PRODUCTS INC. (hereinafter referred to as "L & F") filed a Motion to Dismiss Counts II and III of Counterclaim of Blue Cross Laboratories and Darrell G. Mahler (alternatively Motion for More Definite Statement on Count I). L & F also filed a Motion to Sever and Stay Blue Cross's Counterclaims. Counter-defendants S.C. Johnson & Son, Inc. (hereinafter referred to as "Johnson") and The Drackett Company (hereinafter referred to as "Drackett") joined in these motions. For the reasons stated herein, the Motions to Dismiss Counts II and III of Blue Cross's Counterclaim are GRANTED WITH PREJUDICE. There remains Count I of the Counterclaim. The Motions to Sever and Stay are DENIED.

Blue Cross and Darrell G. Mahler filed a Request for Judicial Notice and Exhibits A–B and a Request for Judicial Notice and Exhibits A–D. Both Requests for Judicial Notice are GRANTED and the court duly took judicial notice in reaching its decision herein.

Defendant and Cross–Complainant MORCO FOODS, INC. (hereinafter referred to as "Morco") filed a Motion for Leave to File Amended Answer to First Amended Complaint; Counterclaims and Crossclaims. The motion is GRANTED IN PART AND DENIED IN PART. The Clerk of the Court SHALL FILE Morco's Amended Answer and Counterclaim. However, counterdefendant L & F is DISMISSED WITH PREJUDICE from Count I of the Counterclaim.

## I.  *Brief History*

Plaintiff THE CLOROX COMPANY (hereinafter referred to as "Clorox") filed a Complaint alleging federal trademark infringement and counterfeiting, false designation of origin (Lanham Act) and violations of California unfair competition law and injury to business reputation and dilution. Clorox alleges that Defendant BLUE CROSS LABORATORIES (hereinafter referred to as "Blue Cross"), manufactured a product constituting counterfeit "Pine Sol" pine cleaner and filled empty bottles with the liquid. Blue Cross contends that it is not a counterfeiter; rather, it is a legitimate well-established business which manufactures generic products. It filled empty and unlabelled bottles with generic pine cleaner and shipped the filled bottles to another entity which then affixed the labels. Other defendants are the entities which allegedly made the bottles, printed and affixed the allegedly counterfeit Pine Sol labels, made the cardboard shipping cartons, and entities (including MORCO FOODS) which marketed and distributed the product.

In August 1993 this court granted a temporary restraining order, seizure order and preliminary injunction. The seizure order authorized plaintiff to seize from Blue Cross's premises products which were "intended to" bear counterfeit labels and Clorox took 5,000 filled but unlabelled bottles of pine cleaner. However, at the hearing on preliminary injunction on August 12, 1993, this court ordered Clorox to return those bottles and enjoined Blue Cross from putting out unlabelled bottles. The court also ordered Clorox to return the personal documents of Blue Cross's president Darrell Mahler, including his Rolodex.

On August 3, 1993 the court extended the temporary restraining order and seizure order to newly-named defendant Morco Foods. Morco's proposed Counterclaim alleges wrongful seizure and other causes of action.

## II.  *Motions to Dismiss the Blue Cross Counterclaim*

The issues raised by these motions are 1) whether Count II of Blue Cross's Counterclaim (conspiracy in restraint of trade) is barred by the *Noerr–Pennington* doctrine; and 2) whether Count III of Blue Cross's counterclaim (common law unfair competition under California law) is preempted by federal law.

### A.  *The Blue Cross Counterclaim*

Blue Cross filed an Answer and Counterclaims against Clorox and the plaintiffs in two other related cases, *L & F Products, Inc. v. Inland Empire,* CV–93–4575–WJR (in which L & F is the plaintiff contending that Blue Cross counterfeited its floor cleaning product "Mop & Glo") and *S.C. Johnson and The Drackett Co. v. Inland Empire,* CV–93–

4532–ER (in which counterdefendants herein Johnson and Drackett are the plaintiffs contending that Blue Cross manufactured counterfeit "Windex" window cleaner.)

In the instant action, Blue Cross's Counterclaim alleges:

*Count I:* wrongful seizure—because the products were not counterfeit and plaintiffs improperly obtained the seizure orders by misrepresenting to the court that Blue Cross is a "fly-by-night" operation (this count is not at issue on the instant motions);

*Count II:* conspiracy in restraint of trade in violation of the Clayton Act;

*Count III:* common law unfair competition under California law.

## B. Count II—Conspiracy In Restraint of Trade

### 1) The Noerr–Pennington doctrine:

■ L & F, Johnson and Drackett move to dismiss Count II on the grounds that all of the Complaints were filed in good faith and the plaintiffs are immune under the *Noerr–Pennington* doctrine from Blue Cross's allegations of antitrust violation in Count II of the Counterclaim. The *Noerr–Pennington* doctrine immunizes a plaintiff from an antitrust counterclaim if the plaintiff filed suit in good faith, even if the plaintiff's intent is to destroy competition. The *Noerr–Pennington* doctrine is intended to protect the First Amendment right to petition the government for redress, including redress through litigation. However, a plaintiff who files a "sham" case is not protected from liability.

■ There is a 2–part test for "sham" litigation: 1) is the lawsuit "objectively" baseless in that no reasonable litigant could expect to prevail on the merits and 2) if (and only if) the litigation is objectively meritless, the court may examine the plaintiff's subjective motivation—the court must focus on whether the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor. *Professional Real Estate Investors, Inc. v. Columbia Pictures,* — U.S. —, —, 113 S.Ct. 1920, 1928, 123 L.Ed.2d 611 (1993).

■ The court holds that Count II is barred by the *Noerr–Pennington* doctrine and is, therefore, dismissed with prejudice. The court finds unconvincing Blue Cross's argument that this case falls within an exception to the *Noerr–Pennington* doctrine for misrepresentations or other fraudulent conduct in the course of non-sham litigation.

In *Real Estate Investors v. Columbia Pictures,* the Supreme Court stated that:

If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr,* and an antitrust claim premised on the sham exception *must* fail. [emphasis added]

*Professional Real Estate Investors,* — U.S. at ——, 113 S.Ct. at 1928. For the following reasons, it seems clear that at the time of filing, the moving parties could reasonably expect a favorable outcome from their lawsuits:

1) At the preliminary injunction hearing before this court, Blue Cross admitted that it manufactured the product, filled the empty bottles and shipped them out unlabelled;

2) Attached as exhibits to the Second Declaration of W.E. Hansen submitted in support of Clorox's reply to the application for preliminary injunction, are seized correspondence emphasizing that Blue Cross was shipping *"unlabeled"* product [Exhibits 1 and 6] and referring to the product as "PINE–SOL", not just "pine cleaner" [Exhibit 2]; and

3) The court was not persuaded by Blue Cross's contention at the preliminary injunction stage that Clorox was unlikely to prevail because the issue before the court was not whether Blue Cross could manufacture and sell generic product. Rather, the real issue was whether Mex America counterfeited and Blue Cross did not know that a counterfeit label would be attached. While this argument may emerge as the prevailing one, it is not sufficient at this stage of the case to support a finding that the moving parties engaged in sham litigation.

### 2) *Intent to destroy competition is not an issue here.*

The argument in Blue Cross's Opposition that the Counterclaim pleads facts demonstrating the counterdefendants' intent to destroy competition from Blue Cross is of no practical import here. Since the court holds herein that the moving parties filed suit in good faith, it does not reach the second prong of the test, whether the baseless lawsuit is intended to *directly* interfere with the competition.

■ The "bona fide" status of Blue Cross is relevant to Count I, the wrongful seizure counterclaim, which is not being litigated in the instant motions. Blue Cross's "character" is relevant to Count I because:

> It would not be appropriate to order such a seizure against a reputable merchant, absent unusual circumstances—such as when the applicant can make a particularized showing that the merchant would be likely to defy a court order to maintain the status quo. A reputable businessperson would not be likely to conceal or destroy evidence when notified of a pending lawsuit, and the issuance of an ex parte seizure order against such a person would therefore be wholly inappropriate, absent the unusual circumstances just mentioned.

*General Elec. Co. v. Speicher,* 681 F.Supp. 1337, 1343 (N.D.Ind.1988).

### 3) *This case does not fall within the exception to Noerr–Pennington.*

The Mugits Declaration submitted in support of Clorox's application for its seizure order stated in paragraph 10 that Blue Cross "is a large manufacturer of generic cleaning products, and I believe there should be large quantities of the counterfeit PINE–SOL bottles at Blue Cross Laboratories being filled for Inland Empire." A similar statement was made in the declarations supporting L & F's and Johnson and Dracketts' applications.

The case relied upon by Blue Cross in its Opposition, *St. Joseph's Hospital v. Hospital Corp. of America,* 795 F.2d 948 (11th Cir. 1986), would require more egregious conduct than that alleged in the instant case: "a pattern of baseless, repetitive claims consti-tuting an abuse of the judicial process which effectively bars persons from access to the courts." *Id.* at 955. Blue Cross has not established that a pattern of abusive conduct exists here.

### C. *Failure to Allege Anti–Trust Injury*

L & F contends that Count II of the Counterclaim fails to allege an anti-trust injury because Blue Cross did not allege that L & F or any other counterdefendant caused it a competitive injury. Because the court is dismissing Count II on other grounds, it does not reach this issue.

### D. *Count III—State Law Unfair Competition*

■ L & F contends that Count III · is preempted by federal law (the Trademark Counterfeiting Act of 1984). The court has examined Count III of the Counterclaim and notes that it incorporates by reference all of the preceding paragraphs (including Count I's allegations under 15 U.S.C. § 1116(d)). There are no additional factual allegations in this Count, and the basis for Count III is clearly the allegedly wrongful seizure of Blue Cross's products in order to interfere with competition. Therefore, this claim is preempted. The motion to dismiss Count III is GRANTED WITH PREJUDICE.

### E. *Motion to Strike and Sever Counterclaims*

■ L & F, Johnson and Drackett complain that Blue Cross filed identical counterclaims in each of the three actions. The counterdefendants move to strike any claims that do not arise out of facts underlying Clorox's claims in the Pine Sol case.

The moving party counterdefendants also argue that Blue Cross's counterclaims should be severed because they arise out of orders entered by the judges in the two related cases and will, therefore, litigate unrelated questions of fact and law. In addition, not severing the counterclaims may prejudice the moving counterdefendants because it may confuse the jury.

The Motion to Strike and Sever is DENIED. In opposing the preliminary injunction, Blue Cross stated its intent to move to consolidate all 3 cases. This effort was un-

successful; however, Blue Cross should not be penalized because it is being forced to litigate three separate lawsuits.

### F. Motion for More Definite Statement as to Count I

The moving parties alternatively move for a more definite statement on Count I, the wrongful seizure claim. The counterdefendants want Blue Cross to differentiate among conduct allegedly performed by Clorox, as opposed to L & F or Johnson and also want Blue Cross to identify what conduct was allegedly actively performed as opposed to its conspiracy allegations.

The motions are DENIED. Count I of the counterclaim satisfies the pleading requirements of Federal Rules of Civil Procedure, Rule 8.

### G. Motion to Stay Counterclaim

■ The moving parties seek to stay the Counterclaim on the grounds that Blue Cross is attempting to shift the focus of the lawsuit from the plaintiff's counterfeiting allegations to Blue Cross's conspiracy allegations. The motion is DENIED.

First, this motion may be mooted to some extent because the case will be simplified by the dismissal with prejudice of the antitrust cause of action (Count II) and the third cause of action. Second, Blue Cross should be permitted to litigate Count I, the wrongful seizure claim, at the same time as all the other issues arising out of the common facts.

■ Count I will not implicate the attorneys because Blue Cross cannot bring a wrongful seizure action against the attorneys themselves. Counsel are not considered "applicants" for a wrongful seizure order pursuant to 15 U.S.C. § 1116(d). *Electronic Laboratory Supply Co., Inc. v. Cullen,* 977 F.2d 798 (3rd Cir.1992) ("applicant" means the person who allegedly wrongfully obtained the seizure order; *(Id.* at 803–04) and the Lanham act provides a cause of action against the plaintiff who wrongfully uses the ex parte seizure remedy *(Id.* at 808)).

1. Clorox relies on *Hsu v. Intel,* a 9th Circuit case which cannot be used as precedent under Ninth Circuit Rule 36–3. Under Rule 36–3, *Hsu v.*

### III. Defendant Morco Food's Motion to File Amended Answer; Counterclaims and Crossclaim

MORCO FOODS (hereinafter referred to as "Morco") moves to amend its Answer and to bring crossclaims and "arguably compulsory" counterclaims against plaintiff and other parties. Morco is a California corporation which allegedly "purchases and distributes household cleaners bearing counterfeits of the PINE–SOL trademark." [First Am. Complaint, ¶ 3(i) ]. Clorox conducted an *ex parte* search and seizure at Morco's place of business on August 4, 1993.

Morco wishes to assert the following causes of action against all counterdefendants:

*First Counterclaim:* wrongful seizure;

*Second Counterclaim:* abuse of process;

*Third Counterclaim:* trade secret misappropriation;

*Fourth Counterclaim:* conversion;

*Fifth Counterclaim:* interference with economic interests;

*Sixth Counterclaim:* unfair competition.

Among Morco's complaints are that during the search, counsel for Clorox telephoned an unknown third party from Morco's premises and discussed the contents of some of the seized documents. Morco also contends that Johnson's seizure was overbroad and included unrelated items like 1099 forms and some personal items of Morco's president, including his Rolodex.

Clorox opposes Morco's motion to amend on the grounds that Morco is estopped from complaining about the seizure order because it stipulated to the entry of a preliminary injunction and did not contest the seizure at the hearing on the preliminary injunction. Therefore, Clorox contends that Morco has waived its right to protest and amendment would be futile. The court is not persuaded by Clorox's arguments and Morco's motion is GRANTED.[1]

*Intel* may only be cited as precedent in the *same* case, not in an unrelated case.

The court is unwilling at this stage of the case to prevent Morco from raising the issue of wrongful seizure. An ex parte seizure order has been called a "drastic" remedy which should be ordered only as a last resort. *General Elec. Co. v. Speicher,* 681 F.Supp. at 1342. There are statutory safeguards present in 15 U.S.C. § 1116(d)(4), (7) and (11). A seizure is wrongful:

> if the applicant acted in bad faith in seeking it. For example, it would obviously constitute bad faith for an applicant to seek a seizure order in an effort to prevent the sale of legitimate merchandise at discount prices.... [A] seizure must be considered "wrongful" if the matter seized is legitimate, noninfringing merchandise.

*Major League Baseball Promotion v. Colourtex,* 729 F.Supp. 1035, 1048 (D.N.J.1990), quoting Joint Statement on Trademark Counterfeiting Legislation, Senate Comm. on the Judiciary, S.R. No. 98–526, 98th Cong.2d Sess. 34–628, 629.

### A.  *Collateral estoppel*

■ Collateral estoppel should not bar Morco's counterclaim. There is a difference between a preliminary injunction under Rule 65 and a statutory seizure order under § 1116(d). The Lanham Act is the exclusive vehicle for counterfeit seizures.

■ The issues relevant to entry of a preliminary injunction are: 1) likelihood that the movant will succeed at trial; 2) whether the movant will suffer irreparable injury absent injunctive relief; 3) what is the harm to other interested parties if relief is granted; and 4) effect on the public interest. The issues relevant to the entry of a seizure order are: 1) an order other than an ex parte seizure order is not adequate; 2) the applicant has not publicized the requested seizure; 3) the applicant is likely to succeed in showing that the person against whom the seizure is sought has used the counterfeit mark; 4) the harm to the applicant of denying the seizure order outweighs the interests of the person against whom the seizure would be effected; and 5) the person against whom the seizure would order would "destroy, move, hide, or otherwise make such matter inaccessible to the court". 15 U.S.C. § 1116(d)(4).

In its application, Clorox requested both a preliminary injunction under Rules 65 and 54 *and* a seizure order under Section 1116(d). The stipulation to the preliminary injunction did not make any reference to the seizure order. Because the issues do not overlap, the court holds that Morco is not collaterally estopped.

### B.  *Waiver*

■ Although collateral estoppel does not bar Morco's right to bring a wrongful seizure claim, the question remains whether Clorox is correct in asserting that Morco waived its right to file a counterclaim for wrongful seizure because it did not appear at the hearing to contest the seizure. 15 U.S.C. § 1116(d)(11) provides for a cause of action for wrongful seizure, but the statute does not state that opposing the seizure order at the hearing is a prerequisite to filing suit under subsection 1116(d)(11). The stipulation to the preliminary injunction did not state that Morco was waiving its right to proceed with a wrongful seizure action. Clorox and L & F have not cited any authority to support their position. Therefore, the court holds that Morco did not waive its right to bring a wrongful seizure action.

### C.  *L & F's Opposition*

■ L & F also opposes Morco's motion for the following reasons: 1) the *Noerr–Pennington* doctrine does not only apply to antitrust claims and it bars the 3rd through 6th counterclaims (trade secret misappropriation; conversion; interference with economic interests; unfair competition) (*Professional Real Estate Investors v. Columbia Pictures,* —— U.S. at ——, 113 S.Ct. at 1927; *Pacific Gas & Electric Co. v. Bear Stearns & Co.*); 2) the second through sixth counterclaims are preempted by federal law; and 3) the first counterclaim (wrongful seizure) fails to state a claim because an action for wrongful seizure under 15 U.S.C. § 1116(d)(11) must be brought against the applicant for the seizure order.

In the instant case, Clorox was the applicant, not L & F. The court holds that since L & F was not the applicant in the instant case, there is no cause of action against L &

F under section 1116(d)(11). Therefore, L & F is DISMISSED from the first counterclaim with prejudice.

IT IS SO ORDERED.